## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

| | | |
|---|---|---|
| KYRA CANNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 3:20-cv-401 |
| | ) | |
| WILLIAM SMITH | ) | |
| RPD CHIEF OF POLICE, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN DOE(s) | ) | |
| RPD OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

The Plaintiff, Kyra Canning, by counsel, brings this civil action seeking judgment against Defendants William Smith, Chief of Richmond City Police, and John Doe(s) Richmond Police Officers, and in support sets forth as follows:

1. Kyra Canning brings this complaint pursuant to 42 U.S.C. § 1983, alleging violations of his First and Fourth Amendment rights.

2. Defendants are responsible for denying Ms. Canning's constitutional rights secured under the First and Fourth Amendments of the United States Constitution and for otherwise retaliating against Ms. Canning in violation of his exercising his First Amendment rights to free speech, peaceable assembly, and his right to petition the government for a redress of grievances.

## **JURISDICTION AND VENUE**

3. This Court has jurisdiction over this action pursuant to 28 U.S. Code § 1331, as the claims involve a civil action arising under the Constitution of the United States of America.

1

4. Venue is proper in the Richmond District pursuant to 28 U.S. Code § 1391(b) and Local Rule 3(B)(4), because the events herein occurred within the City of Richmond.

## PARTIES

5. Ms. Canning is an individual and resident of Richmond, Virginia. Ms. Canning is an American citizen and, on June 1, 2020, exercised his constitutional right to be present at a gathering of protestors near the Lee Monument in Richmond, Virginia.

6. Mr. Smith is the Chief of the Richmond City Police Department and is responsible for the oversight, administration, education and management of the Richmond City Police Department and its individual officers. Mr. Smith is responsible for ensuring that proper training, policies and procedures are in place to prevent the unnecessary violation of the constitutional rights of those with whom Richmond police come into contact with. Mr. Smith is required by law to ensure the protection of the constitutional rights of all persons who come into contact with the Richmond City Police. In particular, Mr. Smith was responsible for ensuring that those under his command and control did not deliberately and maliciously interfere with the rights of citizens to lawfully and peacefully assemble, speak and petition the government for a redress of grievances. Mr. Smith is sued in his individual capacity. Similarly, Mr. Smith is responsible for ensuring that those under his command do not violate citizens' Fourth Amendment rights by using excessive force.

7. John Doe(s) Police Officers are Richmond City Police Officers who knowingly, willfully and maliciously fired tear gas and otherwise intimidated and used force to unlawfully disperse a peaceful assembly of protestors at the Lee Monument in Richmond, Virginia on June 1, 2020. The identity of these Police Officers has been deliberately withheld by the Richmond City Police Department and Mr. Smith. John Doe(s) are sued in their individual capacities.

## FACTUAL ALLEGATIONS

8. On May 25, 2020, Minneapolis police officers detained George Floyd, a black man who was accused of buying cigarettes with a counterfeit $20 bill. White police officers detained Mr. Floyd in handcuffs and, as seen on video, restrained him for over eight minutes with an officer's knee pressing against the back of Mr. Floyd's neck, a position known by law enforcement to pose an unnecessary risk of serious harm. The restraint ultimately resulted in Mr. Floyd's death.

9. In response to the obvious, unlawful and horrific murder of Mr. Floyd, protests occurred throughout dozens of American cities, including Richmond, where concerned citizens demanded change and police accountability in the face of numerous, public and often video documented civil rights violations by police across the country, frequently perpetrated against black Americans and other Americans of color.

10. Some of these protests resulted in damage to person and property in Richmond, Virginia. Consequently, on May 31, 2020, Mayor Levar Stoney and city leadership established a curfew of 8 p.m. those within the city. The purpose of the curfew was to allow peaceful protesting to occur prior to 8 p.m.. In particular, Mayor Stoney stated, "We're taking these steps to **promote lawful and safe demonstration** and to protect people and property."

11. On June 1, 2020, a large group of protesters lawfully gathered around the Lee Monument in Richmond, Virginia. The Lee Monument is a large statue on public property surrounded by a large grassy area within a traffic circle. The area around the Lee Monument is regularly used by the public and is a frequent home for protesters, many of whom that see Robert E. Lee as a positive or romanticized symbol of slavery. The area around the Lee Monument is a public forum and is regularly used for the peaceable assembly and the expression of the public's First Amendment rights to protest.

12. The protestors were objectively non-threatening and non-violent. In fact, moments before the Richmond Police fired tear gas into the peaceful protest, video shows the protestors chanting "WHAT ARE WE HERE FOR? **LOVE**."

13. During the course of this lawful and peaceable assembly of protestors, the Richmond City Police and John Doe(s) Police Officers arrived. The police arrived at approximately 7:30 p.m., or thirty minutes prior to the curfew established by city leadership.

14. At the time that the Richmond Police and John Doe(s) Police Officers arrived, Ms. Canning was near the Lee Monument, standing and/or kneeling with a group of other protesters.

15. John Doe(s) police officers immediately began to cut off the protesters standing by the Lee Monument from those standing on the outer edges of the traffic circle, assuming assault positions, as evidenced by this photograph taken by another bystander:



16. As the Richmond Police and John Doe(s) Officers arrived on scene, the protesters formed a line next to the monument and knelt down and placed their hands in the air. The protestors were non-threatening and non-violent:



17. Nevertheless, the police began shooting tear gas and/or other explosive, chemical agents into the crowd of lawful, peaceful protestors. This attack was caught on numerous cell phone video recordings, including the still shots reproduced below:





18. In response to the attack, the protestors, including Ms. Canning, began to flee for safety and were forced to abandon their constitutionally protected assembly.

5

19.     The Richmond Police and John Doe(s) Officers, nevertheless, pursued the fleeing protestors and assaulted them with chemical agents:



20.     After being tear gassed, Ms. Canning was detained and unlawfully seized by the Richmond City Police and John Doe(s) Police Officers.  The Officers handcuffed Ms. Canning and forced her to lie on the ground on her stomach.

21.     Ms. Canning remained handcuffed for roughly 10 minutes before John Doe(s) released her without any explanation.

22.     Ms. Canning was never charged with any crime.

23. Despite Ms. Canning not breaking curfew, never attacking or threatening Richmond Police, and breaking no law, Ms. Canning was subjected to tear gas, detention, and humiliation by Richmond Police and John Doe(s) Officers.

## COUNT I
### 42 U.S.C. – §1983 First Amendment Retaliation – All Defendants

24. Plaintiff incorporates and realleges the previous statements as if fully set forth herein.

25. "[A] First Amendment retaliation claim under § 1983 consists of three elements: **(1)** the plaintiff engaged in constitutionally protected First Amendment activity, **(2)** the defendant took an action that adversely affected that protected activity, and **(3)** there was a causal relationship between the plaintiff's protected activity and the defendant's conduct." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 537 (4th Cir. 2017); Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000) (accord) (emphasis added).

26. **First**, Ms. Canning and others were peacefully participating in a political protest, conduct that is unequivocally protected by the First Amendment of the United States Constitution. See Am. Life League, Inc. v. Reno, 47 F.3d 642 (4th Cir. 1995).

27. **Second**, Defendants deployment of tear gas and/or other noxious chemicals, as well as advancing on the lawful protest bearing assault weapons in full body armor, adversely affected Ms. Canning's and the other protestors' protected First Amendment activity.

28. **Third**, the evidence is clear that the Richmond Police, Mr. Smith and John Doe(s) responded to the gathering of Ms. Canning and the other protestors by ordering or otherwise causing a large police force to gather to unlawfully attack and disburse the peaceable assembly.

29. The hardship to the Richmond Police Department and Defendants in allowing peaceable demonstrations is *de minimis*, whereas the harm to the muffled and terrified protestors, including Ms. Canning is irreparable.

## COUNT II
### 42 U.S.C. §1983 – Excessive Force in Violation of the Fourth Amendment

30. Plaintiff incorporates and realleges the previous statements as if fully set forth herein.

31. "The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003).

32. As stated above, Ms. Canning and the other protesters had not committed any crime, had not violated the City of Richmond's curfew, and did not threaten police officers.

33. Nonetheless, Defendants deployed tear gas, a chemical agent that is intended to cause pain and suffering in the people against whom it is deployed.

34. All force used by a law enforcement officer against individuals must be "objectively reasonable" in order to not violate the Fourth Amendment's prohibition of excessive force.

35. Defendants did not use reasonable force in dispersing Ms. Canning and the other protesters, as the protesters were not being destructive or unruly, but rather just exercising their First Amendment rights at the time and place that they were expected to exercise those rights.

## COUNT III
### 42 U.S.C. §1983 – Unlawful Seizure in Violation of the Fourth Amendment

36. Plaintiff incorporates and realleges the previous statements as if fully set forth herein.

37. The Fourth Amendment prohibits search and seizure of free citizens without probable cause.

38. As stated above, Ms. Canning did not commit any crime, nor did he violate the City of Richmond's curfew.

39. Despite Ms. Canning committing no crime, Defendants seized Ms. Canning and placed her in handcuffs.

40. Defendants at no point had probable cause to seize, detain or arrest Ms. Canning.

41. Defendants' seizure of Ms. Canning was inappropriate, unnecessary, unlawful, and in violation of Ms. Canning's Fourth Amendment rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against the Defendants in the amount of $250,000.00, jointly and severally, and that the Court enter an award of attorneys' fees against the Defendants pursuant to 42 U.S.C. § 1988, as well as any other relief that this Court deems just and proper.

Respectfully filed,

**KYRA CANNING**

/s/ Seth Carroll

Seth R. Carroll (VSB No. 74745)
Connor Bleakley (VSB No. 92113)
Commonwealth Law Group, LLC
3311 West Broad Street
Richmond, VA 23230
Phone: (804) 999-9999
Facsimile: (866) 238-6415
scarroll@hurtinva.com