IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KYRA CANNING,
   Plaintiff,

v.     Civil Action No.: 3:20-cv-401

WILLIAM SMITH, *et al.*,
   Defendants.

_____

JARROD BLACKWOOD, *et al.*, individually
and on behalf of a class of similarly situated
individuals,
   Consolidated Plaintiffs,

v.     [Previously Civil Action No.: 3:20-cv-444]

JOHN/JANE DOES, I-X,
   Consolidated Defendants.

### *BLACKWOOD* PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Comes now the *Blackwood* Plaintiffs, by counsel, and files this response to the joint opposition of the City of Richmond, William Smith, and William Blackwell, concerning the *Blackwood* Plaintiffs' motion for leave to file the amended complaint.

**I.     The Unfiled Amended Complaint, and the Standing Protective Order**

These defendants are playing games with this Court. They cry that the amended complaint is "unfiled" and was "unattached" to the motion that asks the Court for leave to file it (Case 3:20-cv-401 ECF Doc. 16 at 2, Doc. 76 at 3, 5), yet they *know*—and even *quote*—the standing order of the Court, which provides, "[T]he parties . . . shall not disclose the identities of the officers [involved in the June 1, 2020 incident] ***without first obtaining leave from the Court***." Case 3:20-cv-401 ECF Doc. 16 at 2, Doc. 76 at 5, 9-11, Doc. 58 at 3, Doc. 61 at 3. How

1

can the parties *file the amended complaint* that discloses officers' identities as an attachment *to the motion asking for leave to file it*, if they must obtain leave to file *before filing the complaint* that discloses identities?

These defendants claim that "Nowhere does the Consolidated Plaintiffs' Motion address this" issue of the standing protective orders. Case 3:20-cv-401 ECF Doc. 16 at 2, Doc. 76 at 9. How do these defendants honestly make that claim? The Plaintiffs' brief (Case 3:20-cv-401 ECF Doc. 75) quotes and cites the protective orders expressly on pages 2 to 3:

> Case 3:20-cv-00401-JAG   Document 75   Filed 06/23/21   Page 2 of 9 PageID# 369
>
> . . .
>
> In a subsequent order (**Case 3:20-cv-401 ECF Doc. 16**), entered on July 6, 2020, the Court permitted a subpoena to obtain the names and badge numbers of the officers involved in the subject incident, or alternatively the City could provide a "complete list of names and badge numbers of the officers who were involved and/or present during the events that gave rise to the Complaint." This Order provided that the parties "shall keep the list and the identities on the list confidential and shall not disclose the identities of the officers without first obtaining leave of the Court." The City subsequently produced a list of seventy-one names. *See* **Case 3:20-cv-401 ECF Doc. 23.**
>
> With a further consolidation order, on October 27, 2020, the Court ordered the parties to "generate a discovery plan . . . by November 16, 2020." **Case 3:20-cv-401 ECF Doc. 47.** This was subsequently extended by a week. **Case 3:20-cv-401 ECF Doc. 57.** The agreed discovery plan (**Case 3:20-cv-401 ECF Doc. 58**) proposed phased discovery. Phase I involved informal
>
> . . .
>
> Case 3:20-cv-00401-JAG   Document 75   Filed 06/23/21   Page 3 of 9 PageID# 370
>
> discovery of agreed information, and it anticipated assistance from a Discovery Special Master to be appointed by the Court. The discovery in this phase was to focus on "the conduct of, and identity of the officers involved, and the claims and damages of the individual Plaintiffs in the consolidated cases." The agreed plan listed several particular categories of information that the parties agreed would be exchanged, with the expectation that a Discovery Special Master would be appointed to work out disputes concerning other categories of responsive information. It anticipated the entry of a protective order, with the aid of a Discovery Special Master, but it provided that the Order of July 6, 2020 (**Case 3:20-cv-401 ECF Doc. 16**) would remain in effect with respect to the confidentiality of the identity of the officers. Phase I was to be concluded within 90 days of the discovery order. After Phase I discovery, the plan provided that "discovery shall be stayed automatically for 30 days to give the Parties an opportunity to participate in a mediation with the Settlement Special Master." Phase II of discovery would then "include any issues from Phase I, but will also include discovery relating to class certification." The order then contemplated potential further discovery after a determination on the merits of class certification. The order contemplated the end of fact discovery by August 14, 2021.
>
> An order was entered on December 10, 2020, approving of the joint discovery plan. **Case 3:20-cv-401 ECF Doc. 61.** Meanwhile, on November 18, 2020, the Court appointed Mark E. Rubin a special master for settlement purposes. **Case 3:20-cv-401 ECF Doc. 56.** To date, however, no discovery special master has been appointed.

2

Page 4 to 5 of the brief states the *Blackwood* Plaintiffs will make allegations of liability against 32 officers, including 29 named individuals and three individuals whose identity remains unknown.

> Case 3:20-cv-00401-JAG   Document 75   Filed 06/23/21   Page 4 of 9 PageID# 371
>
> . . .
>
> **III.   Argument**
>
> The *Blackwood* Plaintiffs have labored diligently with the limited information provided to them, or available through other channels, to identify the individual officers that are likely liable for the events of June 1, 2020, at Lee Monument, particularly in reference to their individual claims. This has required extraordinary efforts, correlating the data from thirty-four body cameras and several other videos from protestors, in order to attach names to particular individuals in the evidence, most of whom were wearing body gear, face masks, and without visible identification.
>
> Through these efforts, the *Blackwood* plaintiffs are prepared to make allegations of liability against approximately 32 of the 72 officers that the City disclosed to be "involved" with the events at Lee Monument, based on direct liability, supervisory liability, or bystander liability. Of these, the *Blackwood* plaintiffs are prepared to make probable or positive identification of 29 of these individuals, thereby reducing the number of John Does in this suit to three specific
>
> . . .
>
> Case 3:20-cv-00401-JAG   Document 75   Filed 06/23/21   Page 5 of 9 PageID# 372
> individuals whose identities remain to be determined. Additionally, the *Blackwood* plaintiffs are prepared to state claims of municipal liability.

Page 5 of the brief then says, "This amendment is necessary to name the John Doe defendants."

> Case 3:20-cv-00401-JAG   Document 75   Filed 06/23/21   Page 5 of 9 PageID# 372
>
> . . .
>
> The interests of justice support the amendment. This amendment is necessary to name the John Doe defendants, to further specify the claims, and to withdraw the request for a class action. The case has been pending for more than a year. A settlement has not been reached. Phase I of discovery ended March 10, 2021, and the 30-day stay for settlement discussions ended almost two and a half months ago, on April 9, 2021. A discovery master has not been appointed, interfering with the plan of informal discovery, and identifying individual and municipal defendants is necessary for formal discovery.

The issue of the protective orders is therefore not only "addressed" in the brief—it is front and center in the brief. The defendants either failed to read the Plaintiffs' brief, or they are purposefully trying to mislead the Court.

3

These defendants whine that not having the amended complaint "places Defendants at a disadvantage to respond with more substantive arguments." Case 3:20-cv-401 ECF Doc. 76 at 7. If so, that is because the standing order precludes filing a complaint that identifies the officers until the Court gives its leave. But more importantly, these defendants are quietly acknowledging that ***they do not actually have a substantive reason at this time for opposing the amendment***. These defendants want to attack the *proposed amended complaint* because they can't attack the merits of the motion for leave to amend the complaint. This tactic is further demonstrated when the defendants argue that the proposed amended complaint is futile *because they can't evaluate whether* it would survive a Rule 12(b)(6) motion. Case 3:20-cv-401 ECF Doc. 76 at 10-11. Again, it is the standing orders that preclude the advanced filing of the proposed amended complaint, and the defendants have no substantive argument in favor of denying the amendment.

To summarize the position of these defendants, leave to file the complaint (so as to identify officers) should be denied. It should be denied because the amended complaint was not filed as an attachment to the motion asking for leave. But it was not filed as an attachment, because leave has not yet been granted to identify the officers, as required by a standing order. Leave to file therefore ***should not be given*** because leave to file ***has not been given***. This argument is an absurd circularity.

To be as transparent as possible, however under the standing Court orders:

- Both Jarred Blackwood and Megan Blackwood anticipate they will each bring a First Amendment claim against twenty-eight individual defendants. Twelve are named[1] on a theory of direct liability. Seven are named, additionally or alternatively, on a theory of supervisory liability. Twenty-three are named,

---

[1] "Named" in this context means either specifically identified by name, or else identified as a particular John Doe, whose identifying features and actions are pled but whose name is currently unknown.

additionally or alternatively, on a theory of bystander liability. The Police Department will also be a defendant on this claim.

- Both Jarred Blackwood and Megan Blackwood anticipate they will each bring an assault claim against sixteen individual defendants. Eleven are named on a theory of direct liability. Fifteen are named, additionally or alternatively, on a theory or presence plus encouragement.[2]

- Tagg anticipates bringing a First Amendment claim against all the individual defendants. Twenty-four are named on a theory of direct liability. Seven are named, additionally or alternatively, on a theory of supervisory liability. Twenty-four are named, additionally or alternatively, on a theory of bystander liability. The Police Department will also be a defendant on this claim.

- Tagg anticipates bringing a Fourteenth Amendment claim against one defendant, on a theory of direct liability.

- Tagg anticipates bringing an assault claim and a battery claim against twenty-six defendants, all of them being named on a theory of presence plus encouragement. Twenty-four are also named on a theory of direct liability in the assault claim, and one also is named on a theory of direct liability in the battery claim.

- Gayler anticipates bringing a First Amendment claim against twenty-eight individual defendants. Twelve are named on a theory of direct liability. Seven are named, additionally or alternatively, on a theory of supervisory liability. Twenty-four are named, additionally or alternatively, on a theory of bystander liability. The Police Department will also be a defendant on this claim.

---

[2] *See Daingerfield v. Thompson*, 74 Va. 136, 151 (1880).

5

- Gayler anticipates bringing a Fourteenth Amendment claim against three defendants on a theory of direct liability. One will also be named on a theory of supervisory liability, and two will also be named on a theory of bystander liability.

- Gayler anticipates bringing an assault claim against sixteen defendants. Eleven will be named on a theory of direct liability. Sixteen are named, additionally or alternatively, on a theory or presence plus encouragement.

- Gayler anticipates bringing a battery claim against three defendants. One will be named on a theory of direct liability. Two will be named on a theory or presence plus encouragement.

- Angel anticipates bringing a First Amendment claim against twenty-eight individual defendants. Twelve are named on a theory of direct liability. Seven are named, additionally or alternatively, on a theory of supervisory liability. Twenty-four are named, additionally or alternatively, on a theory of bystander liability. The Police Department will also be a defendant on this claim.

- Angel anticipates bringing a Fourteenth Amendment claim against three defendants. Two will be named on a theory of direct liability. One will also be named on a theory of supervisory liability, and two will be named, additionally or alternatively, on a theory of bystander liability.

- Angel anticipates bringing an assault claim against sixteen defendants, all of them on a theory or presence plus encouragement. Eleven will also be named on a theory of direct liability.

- Angel anticipates bringing a battery claim against three defendants. One will be named on a theory of direct liability. Two will be named on a theory or presence plus encouragement.
- Tagg, Gayler, and Angel will each bring a claim of gross negligence against one officer.

These defendants also pretend not to know who is suing them. They speculate that additional plaintiffs could be added to this amendment. Case 3:20-cv-401 ECF Doc. 76 at 3 n.2. The plaintiffs are not adding additional plaintiffs to this suit. If they were, they would have disclosed that. The five currently named putative class representatives are the only plaintiffs who will be party to the proposed amended pleading.[3]

## II. Further Bad Faith Absurdities

But circular reasoning is only the start of these defendants' absurdities. These defendants pout that the amended complaint will not be a class action (Case 3:20-cv-401 ECF Doc. 61 at 2), even though they previously questioned whether this case could proceed as a class action (Case 3:20-cv-401 ECF Doc. 31 at 5-7). They whine that individual defendants have not been served (Case 3:20-cv-401 ECF Doc. 76 at 4), when that is exactly what these plaintiffs want to do by asking for this amendment. These defendants somehow twist the motion to file an amended complaint naming names and specifying claims into "confirmation that the Consolidated Plaintiffs still have not figured out their theory of their case or the legal claims that support their

---

[3] The Defendants intimate that they want all possible suits brought together. While the Court has a right to consolidate pending federal suits, individual plaintiffs have the right to decide (1) whether and when to file the suit; (2) what claims to file—i.e., state or federal claims; (3) whether to file federal claims in state court or federal court; and (4) what meritorious claims they might file against meritorious defendants. The legion of difficulties that attend representation of multiple unrelated parties discourages such mass torts filed as a single lawsuit. In short, it is not the place of these defendants to dictate to the *Blackwood* Plaintiffs such issues as whether they will agree to joint representation with other potential plaintiffs, joinder of claims in a single suit, who will be sued, when the suit will be filed, or what claims may be brought. If the defendants didn't want to face the inconvenience of extensive lawsuits, perhaps they should have taught the officers not to tear gas peaceful assemblies.

theory." Case 3:20-cv-401 ECF Doc. 76 at 2. They claim that during informal discovery they have "cooperated through it all" (Case 3:20-cv-401 ECF Doc. 76 at 4), but they in fact opposed a Rule 30(b)(6) deposition of the City (Case 3:20-cv-401 ECF Doc. 70) that was expressly contemplated and previously agreed to in the discovery plan (Case 3:20-cv-401 ECF Doc. 58 at 10). How is this behavior acceptable?[4]

### III. Ongoing Settlement Discussions

These defendants oppose proceeding with the litigation on the grounds of ongoing "global settlement discussions." Case 3:20-cv-401 ECF Doc. 76 at 2. The Court can assume that if those settlement discussions were bearing fruit as to these plaintiffs, these plaintiffs wouldn't be filing this motion. Moreover, the discovery plan specifically carved out a 30-day period for settlement efforts (Case 3:20-cv-401 ECF Doc. 58 at 10), and that period ended months ago. Settlement discussions are not supposed to be exclude timely litigation process, and the *Blackwood* plaintiffs do not accept interminable settlement discussions as a compulsory alternative to actually litigating this case.

These defendants try to claim that the amendment is futile because the case has not settled. Case 3:20-cv-401 ECF Doc. 76 at 11. This is more than a curious assertion; it is pure absurdity. The case *not settling* is precisely a good reason to get the formal service of process and formal, substantive discovery underway.

A stray comment of these defendants likewise demonstrates their intention to delay and increase the costs of the litigation *because* the *Blackwood* plaintiffs won't settle now on these defendants' terms. Specifically, these defendants state that they "do not oppose the[] [*Blackwood*

---

[4] *Cf.* Fed. R. Civ. Pro. 11(b) ("By presenting to the court a pleading, written motion, or other paper . . .an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.")

plaintiff's] efforts to streamline and clarify their claims into a more procedurally appropriate and manageable action," but only "if Consolidated Plaintiffs have no interest in settling their claims." Case 3:20-cv-401 ECF Doc. 76 at 3. In other words, the *Blackwood* plaintiffs must settle now, on the City's terms, or declare that they have "no interest in settling their claims," or face these defendants' continued, baseless opposition to a properly streamlined and procedurally appropriate litigation process. The defendants will deliberately obstruct the litigation process as pressure for settlement. This is unacceptable.

**IV.     Resetting the Case to Break the Procedural Logjam**

It is clear this case needs to be procedurally reset. By agreement of the parties, fact discovery in this case is supposed to conclude by August 14, 2021. Case 3:20-cv-401 ECF Doc. 58 at 10. The parties stand less than 40 days from that deadline, but these defendants want to delay, delay, delay under the guise of pursuing a global settlement.

The parties agreed to a discovery plan that contemplated the appointment of a discovery master. The Court expected to appoint a discovery master to facilitate informal discovery, but it has not done so. The anticipated discovery plan therefore has not functioned as expected. In fact, nothing has happened in Phase II of discovery—nothing. These defendants claim there is "ongoing discovery" (Case 3:20-cv-401 ECF Doc. 76 at 2) that weighs against granting this amendment, but that is nonsense insofar as the *Blackwood* plaintiffs are concerned. The defendants have no outstanding discovery requests for the *Blackwood* plaintiffs, and they have had none for months. The *Blackwood* plaintiffs have asked this Court for leave to pursue additional discovery, which was necessary because of the absence of a discovery master. These defendants opposed that motion. These defendants have not provided additional information since that time, and the Court has not ruled on the motion.

9

And so this case is stuck in interminable settlement discussions, as these defendants oppose the *Blackwood* plaintiffs' ability to publicly disclose the proper individual defendants—much less offer those individual defendants due process by service of process and initiation of formal discovery—even as the parties stand less than 40 days away from an agreed date for the close of discovery.

Contrary to the assertions of these defendants, the plaintiffs are not looking to "wipe the slate clean." Case 3:20-cv-401 ECF Doc. 76 at 3. After all, the fact of the defendants' conduct on June 1, 2020 is not going away. Instead, the Plaintiffs are simply trying to break an unnecessary procedural logjam.

### V. Deny the Amendment Because It Amends Things?

The defendants do point to a typographical error in the brief—a citation to Rule 15(a)(1) instead of Rule 15(a)(2). The error was obvious based on the status of the case and the Plaintiff's quote from Rule 15(a)(2) under the Applicable Law section. Case 3:20-cv-401 ECF Doc. 75 at 4. The Plaintiffs apologize for any confusion.

These defendants, however, ask the Court to deny leave to amend because the amended complaint would change the prior complaint—creating a "moving target" with "shifting theories." Case 3:20-cv-401 ECF Doc. 76 at 12. But the purpose of amending a complaint is precisely to amend the complaint. The argument fails because it proves too much. If it were valid, no amendment would ever be allowed, because the amendment amends things.

These defendants pretend that the proposed amendment represents "switching course" in a way that the "Federal Rules are designed to prevent." Case 3:20-cv-401 ECF Doc. 76 at 2. On the contrary, Rule 15 allows amendments. Rule 8(a)(2), 11, and 12(b)(6) individually and collectively prevented the *Blackwood* plaintiffs from claiming municipal liability at the time of

filing the initial complaint. Now, with more information, an amendment is appropriate. The original complaint in this case clearly articulated theories of direct, bystander, and supervisory liability, so there is nothing new in that regard. Case No 3:20-444 ECF Doc. 1 at 3-4, 18-19, 21, 23-24. Finally, Rule 23 demonstrates that class certification is never automatic, and should be addressed "[a]t an early practicable time," so it is absurd to assert the Federal Rules are "designed to prevent" a putative class action from being withdrawn through an amended complaint *even prior to service of process*.

It was clear from the beginning of this case that amendments would be necessary because the defendants did not know the identity of the individual who were actually liable. They had no way of getting that information, under the circumstances, without limited discovery. The City's list of names of people "involved" was not enough, because many of the 72 people on that list were not likely liable. So the amendment to add information about specific defendants is entirely appropriate and expected. Moreover, withdrawing the putative class action can hardly be considered prejudicial to the defendants. The complaints on that issue are feigned. Finally, with regard to municipal liability, these defendants previously complained that it was a "problem" that these plaintiffs "have not sued any other defendant (like the City), and therefore must hang their case on the individual actions of individual officers." Case 3:20-cv-401 ECF Doc. 70 at 3. This amended complaint addresses that so-called "problem."

### VI.  Relation to the Motion for Additional Discovery

These defendants try to pretend that the *Blackwood* plaintiffs are flip-flopping or misleading the Court by previously filing a motion for additional discovery to identify individual defendants—a request the Court has not ruled on in the two months since it has been filed—and

11

now requesting leave to amend the complaint to identify individual defendants. There is no inconsistency.

First, contrary to these defendants' willful misreading of the plaintiff's brief (Case 3:20-cv-401 ECF Doc. 76 at 4), three particular officers the plaintiffs intend to sue have not been identified—these three officers remain unidentified "John Does." Case 3:20-cv-401 ECF Doc. 75 at 4-5. As such, further discovery still is necessary, and the prior motion is not moot.

Second, in the two months since the *Blackwood* Plaintiffs filed the motion for additional discovery, their counsel has spent more than 125 hours analyzing the video footage and all information available, and working to prepare the proposed amended complaint. This time-consuming process was necessary in large part because these defendants opposed reasonable discovery options such as a Rule 30(b)(6) deposition of the City, forcing these Plaintiffs to pursue the more time-consuming course. In short, these defendants have driven up the costs of the litigation by their opposition to reasonable discovery, but the *Blackwood* plaintiffs chose not slow down assembling evidence merely because these defendants preferred obstruction and delay.

Third, the *Blackwood* plaintiffs have gone two months without a ruling on the reasonable request for additional discovery. But they will not let perfect information for filing an amended complaint be the enemy of the timely prosecution of their claims. The amended complaint they propose to file is not perfect. For instance, three specific officers remain unidentified. Several material questions about the attack at Lee Monument remain unanswered. Some officer that should be liable may not be named, because the information is not available to demonstrate liability. But it is time to proceed with formal litigation discovery and end the defendants' unnecessary delay.

Notably, these defendants previously said the motion for additional discovery was "premature, given that Consolidated Plaintiffs have not yet sought to file an amended pleading." Case 3:20-cv-401 ECF Doc. 70 at 10. Now they say that same motion must have been "unnecessary" and is "mooted" by the request to file an amended pleading (Case 3:20-cv-401 ECF Doc. 76 at 9), even though the plaintiffs have expressly stated that there are "three specific individuals whose identities remain to be determined." Case 3:20-cv-401 ECF Doc. 75 at 4-5. This is inconsistent. If the first motion was "premature" because leave to amend had not been requested, then it must be mature now, and not mooted. This is further evidence that these defendants don't care about the legitimacy or consistency of the arguments they make to this Court.

### VII. Ongoing Investigation Excuse

These defendants alos try to play the "ongoing investigation" card. They don't indicate what investigations are ongoing, how long the investigations have been or will be ongoing, or when the Court should allow this case to proceed, even though there is less than eleven months remaining for the statute of limitations. But they assert this suit may prejudice the wrongdoers. Holding wrongdoers accountable is simply not prejudice.

The investigation delay was never intended to last this long. The agreed order imposing the delay expressly provided, "In the event that the Richmond Police Department and the Commonwealth's Attorney for the City of Richmond have not completed their investigations within 120 days from this Order the court will revisit this matter." Case 3:20-cv-401 ECF Doc. 8 at 3. The order was signed June 26, 2020. The 120 day delay expired October 24, 2020, some nine and a half months ago. The defendants offer no compelling reason for further delay.

If the defendants want the Court to stay this proceeding, the Court must consider (1) the interest of plaintiff in proceeding expeditiously balanced against prejudice to plaintiff caused by delay, (2) the burden on defendant, (3) convenience to the court, (4) interests of persons not party to the civil litigation, and (5) the public interest. *United States SEC v. Woodard*, No. 2:13cv16, 2014 U.S. Dist. LEXIS 1573, at *4-5 (E.D. Va. Jan. 6, 2014). The investigators have already had a year to investigate. The interests of the plaintiffs to obtain discoverable information without delay or loss and to prosecute their claims in a timely matter; the interests of similarly situated individuals who may be trying to determine whether to file claims; and the interests of the public generally in police accountability and free speech—let alone the interests of the court—favor action in this case, not further delay. The burden on the defendants, at this point, is small. There is not ongoing criminal prosecution, more than a year after the incident. Further, if the individual defendants have a right to know who is suing them, as these defendants repeatedly claim (Case No. 3:20-cv-00401, ECF Doc. 76 at 3 n.2, 7), the individual defendants likewise have the due process right to know *that they are being sued*. That requires an amended complaint. Only then can assert their rights, clear their names, settle the case, or be held responsible for their wrongdoing.  This means the motion for leave to amend must be granted.

Wherefore, the *Blackwood* Plaintiffs requests this Court to grant them leave to file the amended complaint.

**Respectfully submitted,
Plaintiffs Jarrod Blackwood, Megan Blackwood, Ryan Tagg, Christopher Gayler, and Keenan Angel, by counsel**


By:_/s/ Andrew T. Bodoh_____
Counsel

                Thomas H. Roberts, Esq. VSB # 26014
                tom.roberts@robertslaw.org
                Andrew T. Bodoh, Esq. VSB # 80143
                andrew.bodoh@robertslaw.org
                Thomas H. Roberts & Associates, P.C.
                105 South 1st Street
                Richmond, VA 23219
                (804) 783-2000 (telephone)
                (804) 783-2105 (facsimile)
                *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

   I hereby certify that on the July 9, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send an electronic notification to all counsel of record who have appeared in this matter, including the following:

Seth R. Carroll, Esquire
Connor Bleakley, Esquire
Mark Dennis Dix
Commonwealth Law Group
3311 West Broad Street
Richmond, Virginia 23230
Telephone: (804) 999-9999
Facsimile: (866) 238-6415
mdix@hurtinva.com
scarroll@hurtinva.com
cbleakley@hurtinva.com
*Counsel for Plaintiff Kyra Canning*

Jonathan E. Halperin, Esquire
Halperin Law Center
52525 Hickory Park Drive, Suite B
Glen Allen, Virginia 23059
Telephone: (804) 57-0100
Facsimile: (804) 597-0209
Email: jonathan@hlc.law
*Counsel for Plaintiff Kyra Canning*

Lindsey Ann Strachan
Steven David Brown
Isler Dare PC
411 East Franklin Street
Suite 203
Richmond, VA 23219
(804) 489-5503

15

Fax: (804) 234-8234
lstrachan@islerdare.com
sbrown@islerdare.com
*Counsel for Defendant Smith*

Additionally, this has been emailed to:

Tim Schulte (VSB #41881)
Blackwell N. Shelley, Jr. (VSB #28142)
Shelley Cupp Schulte, P.C.
3 W. Cary Street
Richmond VA 23220
(804) 644-9700
(804) 278-9634 [fax]
schulte@scs-work.com
shelley@scs-work.com
*Counsel for Plaintiff Nathan Arries*

Wirt P. Marks (VSB# 36770)
Senior Assistant City Attorney
900 East Broad Street, Room 400
Richmond, Virginia 23219
Telephone: (804) 646-3019
Facsimile: (804) 646-7939
Email: Wirt.Marks@Richmondgov.com
*Counsel for Defendant City of Richmond*

Erin R. McNeill, Esq.
Blaire H. O'Brien, Esq.
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 747-5200
Facsimile: (804) 747-6085
emcneill@oag.state.va.us
bo'brien@oag.state.va.us
*Counsel for Gary Settle*

Theodore Webb Briscoe , III
Geoffrey McDonald & Associates PC
8720 Stony Point Parkway
Suite 250
Richmond, VA 23235
804-888-8888
Fax: 804-359-5426
tbriscoe@mcdonaldinjurylaw.com
*Counsel for Plaintiff Maria Lourdes Maurer*

By: /s/ Andrew T. Bodoh
Counsel

Thomas H. Roberts, Esq. VSB # 26014
tom.roberts@robertslaw.org
Andrew T. Bodoh, Esq. VSB # 80143
andrew.bodoh@robertslaw.org
Thomas H. Roberts & Associates, P.C.
105 South 1st Street
Richmond, VA 23219
(804) 783-2000 (telephone)
(804) 783-2105 (facsimile)
*Counsel for Consolidated Plaintiffs Jarrod Blackwood, Megan Blackwood, Ryan Tagg, Christopher Gayler, and Keenan Angel*